IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY MARTEN, | ) | |
|     Plaintiff, | ) | C.A. No. 09-262 Erie |
| | ) | |
|     v. | ) | District Judge Cohill |
| | ) | Magistrate Judge Baxter |
| CORRECTIONS OFFICER BARGER, et al., | ) ) | |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 13] be granted in part and denied in part.

**II.**     **REPORT**

    **A.**     **Relevant Procedural History**

Plaintiff Jeffrey Marten, a prisoner incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), brings this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983 against the following staff members at SCI-Forest: Corrections Officer Barger ("Barger"); E.D. Ray ("Ray"); E.J. Wojcik ("Wojcik"); and Overmyer, (incorrectly identified in the Complaint as "Obermyer").

In his *pro se* complaint [ECF No. 1], and amendment thereto [ECF No. 5], Plaintiff alleges that: (i) Defendant Barger assaulted him with a night stick and kneed him in the left eye in violation of his Eighth Amendment rights and in retaliation for his pursuit of a federal lawsuit against a prison official; and (ii) Defendants Ray, Wojcik and Overmyer retaliated against him for exercising "his First Amendment right to access the courts during two (2) court telephone conferences" by retaining him in administrative custody and removing his telephone and television privileges. In addition, Plaintiff asserts state tort claims of assault and battery against

1

Defendant Barger. As relief for his claims, Plaintiff seeks compensatory and punitive damages.

In response to Plaintiff's amended complaint, Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 13], seeking dismissal of Plaintiff's claims based on the following arguments: (i) Plaintiff's allegations of assault and retaliation against Defendant Barger are fabricated; (ii) Defendant Barger is entitled to sovereign immunity with regard to Plaintiff's state tort claims; (iii) Plaintiff cannot satisfy the second and third prongs of his retaliation claim against Defendants Ray, Wojcik, and Overmyer; and (iv) Plaintiff's claims against Defendants in their official capacities must be dismissed because state officers are not "persons" subject to suit under 42 U.S.C. § 1983, and are entitled to Eleventh Amendment immunity. This matter is now ripe for consideration.

### B. Relevant Factual History

From July 23, 2009, to August 18, 2009, Plaintiff was held in administrative custody ("AC") at SCI-Albion, where he was allowed to make weekly phone calls and was granted permission to have his television in his possession after thirty days of AC status. (Amended Complaint, ECF No. 5, at Section IX.D.1). On August 18, 2009, Plaintiff was transferred from SCI-Albion to SCI-Forest, where he was continued on AC status. (Id. at Section IX.D.2).

On August 19, 2009, Plaintiff attended a telephonic motion hearing before this Court in another federal case he filed against a prison official at Civil Action No. 08-77 Erie. (Amended Complaint, ECF No. 5, at Section VI.E.1-4). The next day Plaintiff's Program Review Committee ("PRC"), consisting of Defendants Ray, Wojcik, and Overmyer, decided to keep Plaintiff in AC status, which "resulted in reduced access to the commissary, reduced access to recreation, confinement in plaintiff's cell for all but five (5) hours per week, [and] denial of access to rehabilitative programs and visits." (Id. at Section IX.E.4-5).

A few days later, on August 25, 2009, Plaintiff claims that Defendant Barger opened Plaintiff's cell door without warning, and entered the cell carrying his nightstick. (Id. at Section VI.E.6). According to Plaintiff, Defendant Barger proceeded to knock Plaintiff to the floor by hitting him in the back of his knees with the nightstick, and then struck Plaintiff's left eye with

his knee. (Id. at Section VI.E.7-8). As a result, Plaintiff sustained bruises to the backs of his knees and "a swollen black and blue left eye," for which Plaintiff received medical attention. (Id. at Section VI.E.9, 11).

On September 3, 2009, Plaintiff attended another telephonic hearing before this Court in Civil Action No. 08-77 Erie, during which Plaintiff complained of the alleged assault by Defendant Barger. (Id. at Section IX.E.6). After this telephone conference, Defendants Ray, Wojcik, and Overmyer allegedly "stripped plaintiff of his privileges to place telephone calls and to have his television in his possession." (Id. at Section IX.D.4). In addition, six days after the September 3, 2009 hearing, Plaintiff was removed from his "quiet cell block" and placed in cell block JD, which is "dominated with long-term disruptive disciplinary custody inmates and is excessively noisy...." (Id. at Section IX.E.7).

### C. Standards of Review
#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550

3

U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See

5

Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Official Capacity Claims

Defendants assert that, to the extent Plaintiff is suing them in their official capacities for monetary damages, they are immune from suit under the Eleventh Amendment. This Court agrees. It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)(holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000)(holding that individuals are barred from seeking monetary damages from state governments or state agencies). See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

6

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued. Wilson v. Vaughn, No. 93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)). Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table). Thus, any claims for monetary damages against the Defendants in their official capacities should be dismissed.

### 2.    Excessive Use of Force

Plaintiff claims that Defendant Barger used excessive force against him in violation of his Eighth Amendment rights when he allegedly assaulted Plaintiff in his cell on August 25, 2009.

"In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley, 475 U.S. at 321. The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Moreover, "a showing of 'significant' or 'serious' injury is not necessary to make an Eighth Amendment claim." Brooks, 204 F.3d at 107, quoting Hudson, 503 U.S. at 8.

Here, Plaintiff alleges that Defendant Barger "beat [him] maliciously and sadistically and without a prison management need," as he "did not provoke, resist, or threaten [Defendant Barger] in any fashion or break any prison rules," (Amended Complaint, ECF No. 5, at Section

7

VI.D and VI.E.10). Thus, Plaintiff has sufficiently pleaded a cause of action for excessive use of force under the foregoing standards to withstand Defendants' motion to dismiss.

Nonetheless, Defendants alternatively seek summary judgment in favor of Defendant Barger, asserting that "Plaintiff's allegations against CO Barger are a complete fabrication." (Defendants' Brief, ECF No. 14, at p. 5). In support of this assertion, Defendants have submitted a copy of a computer printout obtained from SCI-Forest's maintenance department, which indicates that Plaintiff's cell door was never opened on August 25, 2009, the day on which Plaintiff claims Defendant Barger entered his cell and assaulted him. (See Exhibit A attached to Defendants' Motion to Dismiss, ECF No. 13-1, at p. 7 (internal p. 6)).[1] In addition, Defendants cite the report of Lt. Mongelluzzo of the Pennsylvania Department of Corrections' Security Office, who investigated Plaintiff's Abuse Allegation against Defendant Barger and concluded as follows: "[t]he Security Office feels that the alleged assault on inmate Martin did not take place and the injuries that he received were self inflicted to discredit staff, incur a transfer and/or receive monies for damages." (See Exhibit A attached to Defendants' Motion to Dismiss, ECF No. 13-1, at p. 2 (internal p. 1)). Based on the foregoing evidence, Defendants contend that "[t]he assault never happened and Plaintiff has been caught in a lie." (Defendants' Brief, ECF No. 14, at p. 6).

In response, Plaintiff argues that the security video tape of August 25, 2009, would "prove that defendant Barger did in fact enter plaintiff's cell and unlawfully beat him;" however, Plaintiff asserts that defense counsel has "deliberately refused to produce the August 25, 2009 video tape." (Plaintiff's Response in Opposition, ECF No. 20, at p. 3). Plaintiff asserts further that "[c]ounsel cannot come back and say the video tape doesn't exist as he has already testified during the November 16, 2009 court teleconference [in the instant case] that the defense has the video tape of August 25, 2009." (Id.). The Court has reviewed the transcript of the November

---

[1] The authenticity of this printout is verified by a Commonwealth Employee Witness Statement signed by an unknown SCI-Forest staff member and witnessed by "Lt. Mongelluzzo" on September 2, 2009. (See Exhibit A attached to Defendants' Motion to Dismiss, ECF No. 13, at p. 9 (internal p. 8)).

8

16, 2009, hearing in question and takes judicial notice of the fact that defense counsel did indeed disclose that Defendants "have a video that shows that there's absolutely nobody close to his cell at the time [Plaintiff] says [the alleged assault] happens." (See transcript of November 16, 2009, hearing, ECF No. 23, at p. 13). Based on this statement, it appears that the security video would provide the best evidence of whether Defendant Barger entered Plaintiff's cell on August 25, 2009, or not. Thus, the absence of such video from the record leaves a genuine issue of material fact as to whether the alleged assault could have taken place as Plaintiff claims. For this reason, Defendants' motion for summary judgment with regard to Plaintiff's excessive use of force claim should be denied at this stage of the proceeding.

### 3. State Tort Claims

In addition to his excessive use of force claim, Plaintiff asserts state tort claims of assault and battery against Defendant Barger. Defendants seek to have these claims dismissed pursuant to 1 Pa.C.S. § 2310, which provides sovereign immunity for the Commonwealth of Pennsylvania, and its officials and employees acting within the scope of their duties. Pennsylvania law recognizes only nine specifically delineated exceptions to sovereign immunity, which "must be strictly construed and narrowly tailored." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa.Cmwlth. 2003). These exceptions are claims for damages caused by: (1) vehicle liability; (2) medical-professional liability; (3) care, custody and control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. 8522(b). None of these exceptions applies here. Accordingly, Plaintiff's state tort claims of assault and battery against Defendant Barger should be dismissed.

### 4. Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897

9

F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials[2]; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[3]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of

---

[2] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[3] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

10

policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### a. Defendant Barger

Plaintiff claims that Defendant Barger's alleged assault of August 25, 2009, was in retaliation for Plaintiff's pursuit of his legal action against another prison official at Civil Action No. 08-77 Erie. (Amended Complaint, ECF No. 5, at Section VI.E). In particular, Plaintiff claims that upon his transfer to SCI-Forest on August 18, 2009, he was advised that some of his property and legal materials were either missing or lost. (Id. at Section VI.E.3). The next day Plaintiff attended a telephonic motion hearing before this Court in Civil Action No. 08-77 Erie, at which time Plaintiff informed the Court of his missing property and legal material. (Id. at Section VI.E.4). Immediately following the hearing, Senior Deputy Attorney General Robert Willig advised SCI-Forest officials to search for Plaintiff's missing property. (Id. at Section VI.E.5). Defendant Barger's alleged assault of Plaintiff occurred six days later.

Initially, there is no dispute that Plaintiff's pursuit of legal action is constitutionally protected conduct and, thus, Plaintiff has satisfied the first prong of his *prima facie* case of retaliation. Second, there can be no dispute that Defendant Barger's alleged assault of Plaintiff, if it did occur, was an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Seiverling, 229 F.3d at 225. Thus, the Court finds that Plaintiff has sufficiently pleaded an adverse action sufficient to satisfy the second prong of his *prima facie* case of retaliation. Third, Plaintiff has alleged that Defendant Barger's alleged assault was motivated by Plaintiff's pursuit of legal action and there is, at least, a "suggestive temporal proximity" between the telephonic hearing of August 19, 2009 and the alleged assault of August 25, 2009, that "may be sufficient to meet the causal link requirement of the *prima facie* case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535. Accordingly, the Court finds that Plaintiff has sufficiently alleged a *prima facie* case of retaliation to overcome a motion to dismiss.

Nonetheless, Defendants apparently seek summary judgment based on their argument

that Plaintiff has fabricated his claim that Defendant Barger assaulted him and, thus, cannot establish that he suffered an adverse action under the second prong of the retaliation test. However, for the reasons discussed previously, there exists a genuine issue of material fact as to whether the alleged assault could have taken place on the date alleged by Plaintiff. It follows, therefore, that a genuine issue of material fact exists as to whether Plaintiff did indeed suffer adverse action at the hands of Defendant Barger. For this reason, summary judgment cannot be granted in favor of Defendant Barger based on Plaintiff's alleged failure to show adverse action.

Based on the foregoing, therefore, Plaintiff's retaliation claim against Defendant Barger should be allowed to proceed.

### b. Defendants Ray, Wojcik, and Overmyer

Plaintiff claims that Defendants Ray, Wojcik, and Overmyer stripped him of his telephone and television privileges, maintained him in AC status, and later had him moved to SCI-Forest's JD cell block, in retaliation for Plaintiff's participation in the telephone conferences before this Court on August 19, 2009 and September 3, 2009, in Civil Action No. 08-77 Erie. Defendants have conceded that engaging in litigation is constitutionally protected activity and, thus, Plaintiff has met the first prong of his *prima facie* case of retaliation. However, Defendants argue that Plaintiff cannot meet either the second or third prongs of the retaliation test.

### i. Adverse Action

With regard to the second prong, Defendants argue that Plaintiff is unable to demonstrate that he was subjected to adverse action "sufficient to deter a person of ordinary firmness from exercising his 'constitutional' rights," because he has "vigorously exercised his 1st Amendment rights" after the telephone conferences at issue. In particular, Defendants point out that Plaintiff has filed and appealed two grievances; filed three inmate requests to staff; filed the instant lawsuit, including a motion for preliminary injunction and amended complaint; and participated in two more telephone conferences with this Court. (Defendants' Brief, ECF No. 14, at p. 9).

12

However, given that the test for adverse action is an objective one, a plaintiff's litigiousness in the face of alleged retaliatory conduct does not, in itself, entitle a defendant to summary judgment. As the court in Kounelis v. Sherrer, 529 F. Supp. 2d 503 (D.N.J. 2008), observed:

> The law of this Circuit does not support Defendants' position. Moreover, the Court of Appeals has clearly stated that an action is adverse when a person of ordinary firmness would be deterred from exercising his constitutional rights. The Court of Appeals has never required that the plaintiff himself be deterred by the allegedly retaliatory action and it is an illogical requirement. At most, the fact that Kounelis appealed his disciplinary charge and brought legal action against the corrections officers is only some evidence that a person of ordinary firmness would not be deterred, but it clearly does not entitle SCOs Atuncar, Schwenk, and Bush to summary judgment on Kounelis's retaliation claim.

Kounelis, 529 F. Supp. 2d at 531 (footnote omitted). A similar conclusion was reached in Brooks v. Smith, 2007 WL 3275266 (M.D.Pa. 2007):

> Defendants contend that adverse action is not established because Mr. Brooks actually exercised his constitutional rights while in the SHU: he filed administrative grievances and documents in his federal civil rights lawsuit. The test for adverse action, however, is objective, not subjective, and whether the plaintiff was actually deterred by the defendant's retaliatory acts is not dispositive. *See Citizens for a Better Lawnside*, 2007 WL 1557479, at *6; *Cannon v. Burkybile*, No. 99-C-4623, 2002 WL 448988, at *6 (N.D.Ill. Mar. 22, 2002). ...

Brooks, 2007 WL 3275266 at *11.

Since whether a person of ordinary firmness would be deterred is typically a question of fact, see Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000), summary judgment should not be entered in favor of Defendants based upon Plaintiff's alleged failure to satisfy the second prong of the retaliation test.

### ii. Causal Connection

Defendants argue that "Plaintiff can never show the causal connection between his participating in the phone conferences and defendants Overmyer's, Ray's, and Wojcik's actions as he must under the third prong of the retaliation test." (Defendants' Brief, ECF No. 14, at p. 11). On this point, the Court agrees.

At the telephone hearing of November 16, 2009, before this Court, Defendant Ray

13

offered the following testimony under oath in response to questions from Senior Deputy Attorney General Robert A. Willig:

> MR. WILLIG: Mr. Ray, can you explain to the Judge -- Mr. Marten is making allegations that his – I believe it was his telephone, his TV privileges were taken away in retaliation for filing lawsuits, and he has been on AC status in retaliation for filing the lawsuits and engaging in protected activity. Can you tell the Judge what you know about it?
>
> MR. RAY:   Yes, I will. Mr. Marten is on AC status based upon his adjustment in his behavior. He was transferred here from SCI Albion because of his separation against staff. And at this point in time there is a need for increased control of the inmate, which is covered by 802.
>
> As far as his privileges, on AC status there is an L5 – this is covered in our policy. An L5 privilege service chart, which Mr. Marten is not authorized to have a television or phone calls. He can make a request – PRC to have those items.
>
> All of our records, to this point, indicate that while he was at Albion he didn't have those services. And even when he transferred here subsequently, he needs to request those from the PRC, which he has not done to this date.
>
> \*              \*              \*
>
> THE COURT: ... Is it because he's in administrative custody that he has to request that, or is that true for all inmates?
>
> MR. RAY: No. That is just because of his status being an AC inmate.
>
> \*              \*              \*
>
> MR. WILLIG: And, sir, that's true with all AC inmates, all L5 inmates, right?
>
> MR. RAY:   You are correct.
>
> \*              \*              \*
>
> THE COURT: ... But do you consider the legal activities of an inmate when you are deciding whether they should remain in administrative custody?
>
> MR. RAY: No, ma'am. We usually – as I said earlier, the reason why Mr. Marten is on AC status is because there is a need for increased control because of his past behavior and the reasons why he is here.

(See transcript of November 16, 2009, hearing, ECF No. 23, at pp. 4-6).

Based on the foregoing testimony, it is clear that the decision to keep Plaintiff in AC status, where his telephone and television privileges were disallowed, was made based upon

14

Plaintiff's past behavior at SCI-Albion and the felt need for increased control during his period of adjustment at SCI-Forest. Plaintiff has provided no evidence to support his contention that he was kept in AC status and had his privileges taken away as a result of his participation in the two telephone conferences on August 19 and September 3, 2009. In addition, he has offered no counter-evidence, as he must, that Defendants would have handled his adjustment period in AC status any differently under the L5 privilege chart. Thus, Plaintiff has failed to establish the necessary causal connection between the Defendants' actions and his constitutionally protected activity to satisfy the third prong of his *prima facie* case of retaliation. Accordingly, summary judgment should be granted in favor of Defendants' Ray, Wojcik, and Overmyer, with regard to Plaintiff's retaliation claim against them.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 14] be granted in part and denied in part, as follows:

1. Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed based upon Eleventh Amendment immunity;

2. Summary judgment should be denied Defendant Barger with regard to Plaintiff's excessive use of force claim;

3. Plaintiff's state tort claims of assault and battery against Defendant Barger should be dismissed based on Pennsylvania's sovereign immunity;

4. Summary judgment should be denied Defendant Barger with regard to Plaintiff's retaliation claim against him; and

5. Summary judgment should be granted in favor of Defendants Ray, Wojcik, and Overmyer with regard to Plaintiff's retaliation claim against them.

In light of the foregoing, Defendants Ray, Wojcik, and Overmyer should be terminated from this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written

objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                                                /s/ Susan Paradise Baxter
                                                SUSAN PARADISE BAXTER
                                                United States Magistrate Judge

Dated: September 1, 2010

cc:       The Honorable Maurice B. Cohill
           United States District Judge